UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re:<br>　　PAUL FIANO, SR.,<br>　　　　*Debtor* | : : : : | Case No.:  15-21410 (AMN)<br>Chapter 7 |
| PAUL FIANO, SR.,<br>　　　　*Movant*<br>v.<br>PREMIER CAPITAL, LLC,<br>ROBERT AND HELEN WOLVERTON,<br>THOMAS AND TAMMY SOUSA, JR.,<br>AND FORD MOTOR CREDIT, CO.<br>　　　　*Respondents* | : : : : : : : : : : | Re: ECF No. 65 |

**MEMORANDUM OF DECISION AND ORDER AFTER EVIDENTIARY HEARING CALCULATING THE AVOIDANCE OF LIENS PURSUANT TO 11 U.S.C. § 522(f)**

*APPEARANCES*

| | |
|---|---|
| Anthony S. Novak, Esq.<br>Novak Law Office, P.C.<br>280 Adams Street<br>Manchester, CT 06042 | *Counsel for the Movant* |
| Zachary J. Gregoricus, Esq.<br>Curran Antonelli, LLP<br>22 Boston Wharf Road, 7th Floor<br>Boston, MA 02210 | *Counsel for the Premier Capital, LLC* |

Before the Court is the debtor, Paul Fiano, Sr.'s ("Fiano"), motion seeking to avoid judicial liens on his one-half interest ("Fiano's Interest") in commercial property known as 548-552 Middle Turnpike East, Manchester, Connecticut (the "Property") pursuant to 11 U.S.C. § 522(f) (the "Motion to Avoid Liens").  ECF No. 65.  Premier Capital, LLC ("Premier") objected challenging the validity and extent of the senior encumbrances on

1

the Property.[1]  ECF No. 67.  After an evidentiary hearing, I conclude Fiano failed to meet his burden to prove the existence of real estate taxes owed on the petition date, the validity of a mortgage to Rocco Fiano, the extent of the water and sewer liens, and the interest to be charged on a lien in favor of Robert and Helen Wolverton.  Applying the calculation required under § 522(f), Premier's Lien is partially avoided and reduced to $58,001.70 against Fiano's Interest in 548-552 Middle Turnpike East, Manchester, Connecticut.  The subsequent liens of Thomas J. and Tammy Sousa and Ford Motor Credit Company are avoided in their entirety.

## I. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this case by virtue of 28 U.S.C. § 1334(b).  This Court derives its authority to hear and determine this matter on reference from the District Court for the District of Connecticut pursuant to 28 U.S.C. §§ 157(a), (b)(1), and the District Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), and (O). This memorandum constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, applicable in this proceeding pursuant to Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

## II. PROCEDURAL HISTORY

On August 7, 2015, Fiano filed a voluntary Chapter 7 bankruptcy petition (the "Petition Date").  ECF No. 1.  On Schedule A (Real Property), Fiano disclosed a one-half

---

[1] The Motion to Avoid Liens seeks to avoid judicial liens of Robert and Helen Wolverton, Premier Capital, LLC, Thomas J. and Tammy Sousa, and Ford Motor Credit Company.  ECF No. 65.  Premier was the only respondent to object to the Motion.  ECF No. 67.

interest in the Property and estimated the Property had a fair market value totaling $188,600.00 on the Petition Date. ECF No. 8. Fiano claimed an exemption in the amount of $2,500.00 in the Property pursuant to 11 U.S.C. § 522(d)(5).[2] ECF No. 38, Schedule C – Property Claimed as Exempt.

On June 8, 2017, Fiano filed the Motion to Avoid Liens seeking to avoid several judicial liens pursuant to 11 U.S.C. § 522(f). ECF No. 65. In the Motion to Avoid Liens, Fiano asserted the Property had a fair market value of $ 178,500.00[3] as of the Petition Date and was encumbered by the following liens:

| Creditor | Amount Asserted in the Motion | Liens Against | Record Date |
|---|---|---|---|
| Manchester Water and Sewer Department | $14,363.80[4] | Entire Property | 2/1/2006, 2/6/2009, 3/15/2010, 2/23/2011, 3/12/2012, 5/14/2013 |
| Mortgage to Manchester State Bank; later assigned to Rocco Fiano ("Manchester Mortgage") | $45,549.00 | Fiano's Interest | 1/6/1986 |
| Darcey Kitchens and Millwork Inc. ("Darcey Attachment") | $50,000.00 | Fiano's Interest | 6/1/1999 |
| Robert Wolverton and Helen Wolverton ("Wolverton Lien") | $21,841.54 | Fiano's Interest | 2/18/2000 |
| Premier Capital, LLC ("Premier Lien") | $247,282.91 | Fiano's Interest | 1/24/2001 |
| Thomas J. Sousa Jr. and Tammy Sousa | $153,589.90 | Fiano's Interest | 11/26/2011 |
| Ford Motor Credit Company | $ 7,423.72 | Fiano's Interest | 5/5/2014 |

---

[2] No objection was filed to Fiano's claimed exemption and it is allowed as a matter of law. 11 U.S.C. § 522(l).

[3] The fair market value Fiano asserted in the Motion to Avoid Liens was less than the amount he identified on Schedule A. *Compare* ECF No. 8 ($188,600.00) and ECF No. 65 ($178,500.00).

[4] On page 4 of the Motion to Avoid Liens, Fiano claims $14,363.80 is the total water and sewer liens affecting the Property as of the Petition Date. However, when the amount of each water and sewer lien listed on pages 2-4 in the Motion is totaled, the calculation results in $15,313.52.

Premier objected arguing the Manchester Mortgage was invalid and disputing the amounts of the other liens against the Property.  Prior to the evidentiary hearing, Fiano conceded the Darcey Attachment was dissolved by operation of law because a judgment never entered.  ECF No. 133 at 00:19:12 - 00:19:33; ECF No. 141 at 00:32:20 – 00:32:31.[5]  Thus, the Court excludes the Darcey Attachment from the § 522(f) calculation.

On April 29, 2019, the Court held an evidentiary hearing.[6]  Fiano was the sole witness.

### III.    FINDINGS OF FACT

In accordance with Fed.R.Civ.P. 52 and Fed.R.Bankr.P. 7052, after an evidentiary hearing and consideration of the record, the Court makes the following findings of facts.

1. The Property consists of a mixed-use building comprised of four (4) 1-bedroom apartments and a ground level restaurant located at 548-552 Middle Turnpike East, Manchester, Connecticut.  ECF No. 141 at 00:39:28 – 00:40:00.

2. On the Petition Date, Fiano owned a one-half interest in the Property, with the other one-half interest being held by his brother, Rocco Fiano.  ECF No. 126 - Joint Statement of Undisputed Facts, ¶ 3.

3. After the Petition Date and the filing of the Motion to Avoid Liens – in December of 2017 -- Rocco Fiano passed away.  ECF No. 141 at 00:07:36 – 00:07:45; 00:52:59 – 00:53:09.

4. During the hearing, Fiano provided slightly varied valuations for the Property.  On direct examination, Fiano testified the Property had a value of $180,000.00 on the

---

[5]    Audio recordings of hearings are published to the docket of each case with an MP3 file as an attachment. The audio file is referenced using this format: Hours:Minutes:Seconds.
[6]    The audio recording of the April 29, 2019 evidentiary hearing is located at ECF Nos. 141, 142.

Petition Date.  He based this figure upon his knowledge as an owner,[7] his experience as a licensed real estate broker,[8] and his review of Manchester's tax assessment records.  ECF No. 141 at 00:10:35 – 00:10:45; 00:36:38 – 00:37:27; 00:38:30 – 00:39:00.  On cross examination, Fiano acknowledged that he listed the Property's value at a higher amount of $188,600.00 in Schedule A.  ECF No. 141 at 01:05:55 – 01:06:36.  Fiano found the discrepancy in the value unremarkable noting that he -- as a licensed real estate broker -- considers even a five (5%) percent disparity within the range of reasonableness.  ECF No. 141 at 01:11:47 – 01:12:30; 01:19:44 – 01:21:06.

5. Fiano also introduced an appraisal conducted by Robert R. Morra and Frederick L. Speno of Morra Associates providing a valuation $178,500.00 as of November 28, 2016.[9]  Ex. 102.  This appraisal was conducted over a year after the Petition Date and the Court affords it little evidentiary weight.[10]  However, the Court credits Fiano's testimony regarding the condition and age of the building and his experience as an owner and real estate broker and finds that the Property had a fair market value of $180,000.00 on the Petition Date.  Premier offered no evidence to refute Fiano's testimony as to the age, condition, or value of the Property.

---

[7]    "As the owner of the Property, the Debtor is competent to testify as to its value." *Shaw v. Regan (In re Shaw)*, Docket No. 05-35765 (LMW), 2008 Bankr. LEXIS 2727, at *10 n.14 (Bankr. D. Conn. Oct. 9, 2008).

[8]    Fiano has been in the real estate industry for sixty years and is a licensed real estate broker. ECF No. 141 at 00:10:15 – 00:11:15.

[9]    Neither of the appraisers who conducted the appraisal testified during the hearing. The appraisal, Ex. 102, was admitted – not for the truth of the matter asserted – but for purposes of showing that Fiano relied upon it in determining the Property's value. ECF No. 141 at 00:47:00 - 00:50:15.:

[10]   "[T]he petition date is the operative date for determining the various § 522(f) calculations." *In re Armenakis*, 406 B.R. 589, 617 (Bankr. S.D.N.Y. 2009); *see also, In re Bradley*, 369 B.R. 147, 152 (Bankr. S.D.N.Y. 2007)("In deciding the extent of the impairment under Section 522(f), an initial determination must be made of the fair market value of the property for which an exemption is claimed ***at the time that the petition was filed***.")(***emphasis added***).

6. Fiano claimed a $2,500.00 exemption in Fiano's Interest in the Property pursuant to 11 U.S.C. § 522(d)(5). ECF No. 141 at 01:11:24 – 01:11:40; *see also*, ECF No. 38 – Amended Schedule C – Property Claimed as Exempt. No objection was filed to Fiano's claim of exemptions and the $2,500.00 exemption in Fiano's Interest in the Property is allowed by operation of law. 11 U.S.C. § 522(l).

7. During the evidentiary hearing, Fiano – for the first time – claimed that $5,000.00 was owed to the Town of Manchester for real estate taxes as of the Petition Date. ECF No. 141 at 00:22:57 – 00:23:14; 00:24:10 – 00:24:14.

8. Fiano testified that he believed Manchester was owed $15,961.54 for water and sewer liens on the Petition Date. ECF No. 141 at 00:24:16 – 00:24:25; *see also*, ECF No. 131, 124. Fiano asks the Court to credit his testimony that the $15,961.54 figure reported on the Past Due Notice dated November 30, 2016 was the same amount due over a year earlier on the Petition Date. Ex. 103; ECF No. 141 at 00:28:16 – 00:28:28. However, the Past Due Notice is unclear as to the time period it covers and whether it includes post-petition charges. Ex. 103.

   The Court is unpersuaded that the $15,961.54 is an accurate figure as of the Petition Date. Accordingly, the Court relies upon - and will use for purposes of § 522(f) - the amount of $15,313.52 as calculated from the water and sewer liens, Exs. 104 – 109, and as set forth in the following chart:

| Exhibit | Amount Due | For: | Volume & Page |
|---|---|---|---|
| Ex. 104 | $2,801.79 | Water & Sewer for quarter ending 11/2005 | Vol. 3222, P. 106 |
| Ex. 105 | $2,085.62 | Water & Sewer for quarter ending 11/2008 | Vol. 3634, P. 110 |
| Ex. 106 | $2,452.20 | Water & Sewer for quarter ending 2/2010 | Vol. 3745, P. 205 |

| Ex. 107 | $2,889.49 | Water & Sewer for quarter ending 2/2011 | Vol. 3843, P. 326 |
| Ex. 108 | $2,614.58 | Water & Sewer for quarter ending 2/2012 | Vol. 3937, P. 205 |
| Ex. 109 | $2,469.84 | Water & Sewer for quarter ending 2/2013 | Vol. 4069, P. 188 |
| **TOTAL** | **$15,313.52** | | |

The Court does not credit or find reliable Fiano's testimony elicited by Premier regarding possible lease payments made by a tenant at the Property directly to the town of Manchester that may have reduced the balance owed. Again, the Court notes the balance owed on the Petition Date for water and sewer liens was information easily obtainable by either party from the municipal water and sewer authority.

9. Fiano testified that around the time of the Property's acquisition, Fiano and his brother, Rocco Fiano, granted a mortgage to Manchester State Bank ("Manchester Mortgage"). ECF No. 141 at 00:11:50 – 00:12:15; Ex. 110. The Manchester Mortgage is dated January 3, 1986 and recorded in volume 996, page 2 of the Manchester land records. Ex. 110. Attached to the Manchester Mortgage is a variable rate note with an original principal balance of $140,000.00, initial interest rate of 12.00% per annum, and a maturity date of January 3, 2001. Ex. 110.

10. Approximately two years before the maturity date of the note, on January 27, 1999, Manchester State Bank assigned the Manchester Mortgage to Rocco Fiano.[11] Ex. 111. The assignment fails to reflect the consideration paid by Rocco Fiano and does not mention the mortgage note. Ex. 111. Fiano testified Rocco Fiano paid

---

[11] The assignment of mortgage was recorded at volume 2051, page 141 of the Manchester land records.

$50,000.00, but that figure is uncorroborated by any other evidence in the record.

ECF No. 141 at 00:12:20 – 00:12:40.

11. Fiano testified he had an agreement with Rocco Fiano regarding the Manchester Mortgage.  ECF No. 141 at 00:12:47 – 00:12:54.

Counsel: And what was that agreement to your understanding?

Fiano: After he … I would pay him interest on the loan and toward the end of the loan, prior to his passing away, we had an agreement. I asked him because I knew he was sick, he had lung cancer, and I asked him what was going to be the balance that I would owe in the event of his passing.

ECF No. 141 at 00:12:54 – 00:13:24.

Counsel: What was the agreement at that time, if any, that you were going to reimburse Rocco?

Fiano: I was paying him interest payments of $200.00 - $300.00 a month.

Counsel: But what was the principal that you were responsible for?

Fiano: Mine was half of what, about Thirty … Thirty Two Thousand I believe.

ECF No. 141 at 00:19:12 – 00:19:39.

Counsel: And, what do you believe the amount was owed?

Fiano: I believe that the amount that he gave me was accurate at $32,000.00.

Counsel: $32,000.00 is that principal and interest or just …

Fiano: That was Principal.

Counsel: And was there an interest factor?

8

> Fiano: There was interest on it, but I don't believe it showed on the affidavit he gave me. It showed the principal was $32,000.00 and the interest accrued at 5%, brought it up to near $40,000.00.[12]
>
> Counsel: And at the time you filed your Chapter 7 bankruptcy petition, what was your belief as to the balance of that mortgage, that you owed Rocco?
>
> Fiano: The balance at that time was up … was up above $40,000.00, up near $50,000.00.[13]
>
> ECF No. 141 at 00:19:53 – 00:21:00.

12. After receiving a Chapter 7 discharge, Fiano filed a Chapter 13 petition commencing case no. 16-21558.[14] Fiano confirmed a Chapter 13 plan on May 30, 2017. ECF No. 32, Case No. 16-21558. Any debt owed to Rocco Fiano was not addressed in Fiano's Chapter 13 plan. Rather, Fiano testified that he had an agreement with Rocco Fiano that he would pay him after he finished his plan payments because he could not afford to make both the Chapter 13 plan payments and any payment to Rocco Fiano. ECF 142 at 00:57:45 – 00:58:30.

13. Fiano claimed he made payments of $200.00 to $300.00 a month in cash to Rocco Fiano because it was easier for the two of them. ECF No. 141 at 00:21:01 –

---

[12] When Fiano offered the Affidavit signed by Rocco Fiano dated February 21, 2017 ("Rocco Affidavit"), Premier objected claiming it was inadmissible hearsay. Fiano argued the Rocco Affidavit met the hearsay exception for a dying declaration under Federal Rules of Evidence Rule 804. Rule 804(b)(2) excludes a statement from the hearsay rule if the declarant is unavailable as a witness and in a "prosecution for homicide or in a civil case, a statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances." Federal Rule of Evidence Rule 804(b)(2). The Court sustained the objection on hearsay grounds concluding that the Rocco Affidavit failed to satisfy the requirement that the statements be about the cause or circumstances of the declarant's death. However, the Court admitted the Rocco Affidavit into evidence on a restricted basis -- not for the truth of what was owed -- but for the limited purpose of showing why Fiano amended his Schedule D in March of 2019. ECF No. 142 at 00:52:45 – 00:55:25.

[13] On cross examination, Fiano testified that although he believed the amount due to Rocco Fiano was $42,000.00 on the Petition Date, he could not explain why -- despite this belief -- he had only listed Rocco Fiano as having a claim of $1.00 in his original Schedule D. ECF No. 142 at 00:04:02 – 00:04:58; 00:07:09 – 00:07:54.

[14] Fiano's Chapter 13 case no. 16-21558 remains pending.

9

00:21:20; 00:52:45 – 00:52:59. Fiano could not recall the last time a payment was made to Rocco, but believed he had made a payment at some point before filing bankruptcy. ECF No. 141 at 01:23:35 – 01:23:54; 01:24:37 – 01:26:30.

14. Fiano failed to keep any record of payments made to Rocco Fiano. ECF 141 at 00:22:00 – 00:22:04; ECF No. 142 at 00:08:56 – 00:09:39. Any accounting or ledger of the debt would have been in Rocco Fiano's possession and Fiano never saw it. ECF No. 142 at 01:04:15 – 01:04:45.

> Counsel: And at some point did your brother give you any sort of amortization schedule or accounting of what you owed him?
>
> Fiano: My brother kept a ledger on what was owed, yes.
> ECF No. 141 at 00:19:40 – 00:19:53.
>
> Counsel: Are you in possession of Rocco Fiano's ledger?
>
> Fiano: No I am not.
>
> Counsel: You're not in possession of that ledger, are you in possession of the ledger that you testified …
>
> Fiano: No, no I am not.
>
> Counsel: When was the last time you saw that ledger?
>
> Fiano: I personally never really looked at, I never opened a page and looked in it, but I do know he kept a good ledger.
>
> Counsel: So you do not know what's in that ledger, correct?
>
> Fiano: Correct.
> ECF No. 142 at 01:04:15 – 01:04:53.

The Court finds Fiano's testimony as to the debt owed to Rocco Fiano as self-serving and not credible with many statements not having a basis in personal knowledge. No corroborating evidence was offered to substantiate any payments or terms of the agreement with Rocco Fiano.

15. The next encumbrance on the Property in terms of priority is a judgment lien in favor of Robert and Helen Wolverton dated February 16, 2000 and recorded at volume 2149, page 275 of the Manchester land records. Ex. 114. The Wolverton Lien reflects that a judgment was obtained against Fiano "for the sum of Twenty-One Thousand Eight Hundred Fort[y]-One and 54/100 ($21,841.54) Dollars damages." Ex. 114. The Wolverton Lien further states: "To secure said sum and the interest thereon, a judgment lien in favor of Robert Wolverton and Helen Wolverton is hereby placed on the following real estate of said Paul Fiano, Sr., known as 550-552 Middle Turnpike East, Manchester, Connecticut." Ex. 114. Fiano testified he never made any payments on account of the Wolverton Lien and believed the total owed -- with interest – was approximately $40,000.00 as of the Petition Date. ECF No. 141 at 00:32:34 – 00:33:14; ECF No. 142 at 00:40:41 – 00:40:53.

16. Premier's Lien was recorded subsequent in priority to the Wolverton Lien on January 24, 2001 in volume 2237, page 288 of the Manchester land records.[15] Ex. 116; ECF No. 126, ¶ 4. The Premier Lien secured a judgment against Fiano and Valerie Fiano for the sum of "$160,147.66 damages, $83,604.85 interest, $3,000.00 attorney's fees, and $530.00 costs of suit." Ex. 116. The Premier Lien further recited that $247,282.91 remained due. Ex. 116.

17. On November 26, 2001, Thomas J. Sousa, Jr. and Tammy A. Sousa recorded a judgment lien in volume 2355, page 77 of the Manchester land records ("Sousa Lien"). Ex. 117. The Sousa Lien secured a judgment against Paul Fiano Realty,

---

[15] Earlier, on October 6, 2000, Premier recorded a Certificate of Attachment in the amount of $242,000.00 in volume 2208, page 138. Ex. 115.

LLC and Fiano "for the sum of One Hundred Forty-Eight Thousand Three Hundred Seventy-One and 20/100 ($148,371.20) Dollars damages, Four Thousand Nine Hundred Thirty-Five ($4,935.00) Dollars in attorney's fees and Two Hundred Eighty-Three and 70/100 ($283.70) Dollars costs of suit." Ex. 117.

18. On May 5, 2014, Ford Motor Credit Company, LLC recorded a judgment lien against Paul Fiano in volume 4164, page 313 of the Manchester land records ("Ford Lien"). Ex. 118. The Ford Lien secured a judgment against Paul Fiano "for the sum of $6,956.10 damages, $1,043.42 and $275.20 costs of suit" with the sum of $7,423.72 remaining due. Ex. 118.

## IV.    DISCUSSION

Fiano may "avoid the fixing of a lien on [Fiano's Interest] in [The P]roperty to the extent that such lien impairs an exemption to which [he] would have been entitled" under the applicable exemption statutes. 11 U.S.C. § 522(f).[16] A lien impairs an exemption if the sum of all liens on the Property, including the lien under consideration, together with the value that Fiano could claim as exempt in the absence of liens on the Property, exceeds the value of Fiano's Interest in the Property if there were no liens on the Property. 11 U.S.C. § 522(f)(2)(A). "After the lien under consideration has been avoided, it is no longer considered in making the calculation under the formula with respect to avoidance of other liens on the property." 4 *Collier on Bankruptcy* ¶ 522.11.[17]

---

[16] Unless otherwise noted, all statutory references are to Title 11, United States Code (the "Bankruptcy Code").

[17] "Section 522(f)(2) [] sets out a mathematical formula for the courts to apply to determine whether a lien impairs the debtor's exemption. Specifically, liens impair an exemption to the extent that the sum of all liens on the property, including the lien under consideration, together with the value that the debtor could claim as exempt in the absence of liens on the property, exceed the value of the debtor's interest in the property if it were totally unencumbered." 4 *Collier on Bankruptcy* ¶ 522.11[3]; 11 U.S.C. § 522(f)(2)(A).

As the movant, Fiano "bears the burden of proof by a preponderance of the evidence on every element of § 522(f)." *In re Armenakis*, 406 B.R. 589, 604 (Bankr. S.D.N.Y. 2009)(*citing In re Banner*, 394 B.R. 292, 300 (Bankr. D. Conn. 2008). This obligation includes the burden "to prove three crucial facts[:] … the value of the Property, the validity of [a creditor's] alleged lien and, if valid, the value of [the creditor's] lien." *In re Hewitt*, 576 B.R. 790, 794 (Bankr. D. Vt. 2017). Here, there is a dispute as to the amount of real estate taxes owed on the Petition Date, if any, the validity and amount of a mortgage owed to Rocco Fiano, and the amount owed on the Wolverton Lien on the Petition Date. The Court will address each point in turn.

*Real Estate Taxes*

Fiano testified $5,000.00 was due to the Manchester tax collector for real estate taxes. However, Fiano never asserted an amount due for real estate taxes in the Motion to Avoid Liens, in any pre-trial documents submitted in support of the Motion, or in his bankruptcy schedules. No other evidence was submitted corroborating this real estate tax debt[18] although such information would be easily obtainable from the Manchester tax collector. Fiano's testimony on this issue was self-serving and not credible. As the movant, Fiano bore the burden of establishing such real estate taxes were due but this burden was not met, and the $5,000.00 amount will be excluded from the § 522(f) calculation.

*Validity of the Mortgage Owed to Rocco Fiano*

The crux of Premier's objection to the Motion to Avoid Liens is that the Manchester Mortgage, assigned to Rocco Fiano, is an invalid encumbrance and should not be

---

[18] Although at various times during the evidentiary hearing, Fiano and his counsel referenced a real estate tax bill, no real estate tax bill was admitted into evidence. ECF No. 142 at 01:10:45 – 01:13:45.

considered in the § 522(f) calculation.  I agree.  Fiano bore the burden of establishing the validity of Rocco Fiano's alleged lien[19] and he failed to prove its validity under Connecticut law.  *In re Hewitt*, 576 B.R. at 794.  "[P]roperty interests are created and defined by state law.  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."  *AmeriCredit Financial Services v. Tompkins*, 604 F.3d 753, 757 (2d Cir. 2010)(*citing Butner v. United States*, 440 U.S. 48, 55 (1979); *see also, In re Gifford,* 256 B.R. 661, 664 (Bankr. D. Conn. 2000) ("The Supreme Court has long held that, in the absence of a conflict with the Bankruptcy Code, state law will govern the interpretation and application of the terms of a mortgage contract.").  "A mortgage is an interest in real property that secures a creditor's right to repayment."  *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991); s*ee also*, *National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C.*, Docket No. 3:00-CV-1925(AHN), 2008 U.S. Dist. LEXIS 11694, at *76-78 n.12 (D. Conn. Feb. 15, 2008)(*citing Coronet Capital Co. v. Spodek*, 265 A.D.2d 292, 292, 696 N.Y.S.2d 191 (N.Y. App. Div. 1999) ("It has long been held that a mortgage is not valid and enforceable unless there is an underlying valid debt or obligation for which the mortgage is intended as security.")); *Citibank, N.A. v. Stein*, 186 Conn. App. 224, 249-251 (2018)("It has long been established at common law that [t]he mortgage is an incident only to the debt, which is the principal; it cannot be detached from [the debt]; distinct from the debt, it has no determinate value; and the assignee must hold it, at the will and disposal of the creditor, who has the note or bond, for which it is a collateral security.")(*citing J.E. Robert Co. v. Signature Properties, LLC*, 309 Conn. 307 (2013)).

---

[19]  A valid lien is a charge against or interest in property securing payment of a debt or performance of an obligation.  11 U.S.C. § 101(37).

Here, the record is devoid of evidence demonstrating Rocco Fiano was assigned the right to repayment of the underlying debt. The assignment of the Manchester Mortgage to Rocco Fiano fails to reference the underlying note and no other evidence was presented as to the physical location of the note or any endorsement of the note.

While the question presented here is the validity of a mortgage in the context of § 522(f), the Court finds relevant the caselaw regarding a party's standing to foreclose a mortgage under Connecticut law. If Rocco Fiano sought to enforce the Manchester Mortgage pursuant to state law, he would be obligated to show he was either the owner or holder of the note or a transferee of the note with the right to enforce it. Generally, in order to foreclose a mortgage, a party must, "be entitled to enforce the promissory note that is secured by the property. . . . [a party's] possession of a note endorsed in blank is prima facie evidence that it is a holder and is entitled to enforce the note, thereby conferring standing to commence a foreclosure action." *Bank of America, N.A. v. Kydes*, 183 Conn. App. 479, 487, *cert. denied*, 330 Conn. 925 (2018). A non-holder may also enforce a note if the party has "standing as a transferee . . . to enforce the note and mortgage in accordance with §§ 42a-3-203 and 42a-3-301." *Citibank, N.A. v. Stein*, 186 Conn. App. at 251 (*citing* J.E. Robert Co., 309 Conn. 307). Here, there is no evidence in the record to support the idea that Rocco Fiano would be able to foreclose on the mortgage under Connecticut law in the absence of any evidence of owning or being transferred the underlying note.

Even if Rocco Fiano was transferred the right to enforce the underlying debt owed originally to Manchester State Bank – which I am not persuaded is the case -- there is a further issue of whether the Manchester Mortgage is security for the debt Fiano allegedly

15

owes to Rocco Fiano. I conclude it is not. During Fiano's testimony, he described a debt owing to Rocco Fiano on completely different terms than the Manchester State Bank note and mortgage. Fiano claimed he owed Rocco Fiano a debt with a principal balance of $32,000.00, accruing interest at the rate of 5%, and requiring monthly payments to be made only when Fiano could afford it. *See*, ¶¶ 11 -14 above. On the other hand, the Manchester State Bank note had an original principal balance of $140,000.00, an interest rate of 12.00% (with a provision that the interest would never increase above 17.00% or decrease below 7.00%), and a maturity date of January 3, 2001. Despite these material and significant discrepancies, Fiano asks this Court to conclude the Manchester Mortgage secured this new and different debt upon being assigned to Rocco Fiano. For the Manchester Mortgage to be enforceable under Connecticut law, it must satisfy certain minimum requirements as set forth in Conn.Gen.Stat. § 49-31b(a) and under Connecticut common law.[20] The cornerstone of the enforceability requirements depends on whether a mortgage provides reasonable notice to third parties. "The mortgage need not recite all of the details of the underlying transaction," *In re Schreier*, 111 B.R. 25, 27 (Bankr. D. Conn. 1990), but it needs "enough information to allow subsequent creditors, 'by common prudence and by the exercise of ordinary diligence, [to] ascertain the extent of the

---

[20]    Conn.Gen.Stat. § 49-31b(a), provides, "[a] mortgage deed given to secure payment of a promissory note, which furnishes information from which there can be determined [1] the date, [2] principal amount and [3] maximum term of the note, shall be deemed to give sufficient notice of the nature and amount of the obligation to constitute a valid lien securing payment of all sums owed under the terms of such note." Conn.Gen.Stat. §49-31b(a). Absent compliance with Conn.Gen.Stat. § 49-31b(a), a mortgage may still be enforceable if it satisfies the "common law criteria of validity." *Dart and Bogue*, 202 Conn. at 572. "The Connecticut Supreme Court has held that 'the dispositive question in examining the validity of a mortgage is whether it provides 'reasonable notice' to third parties of the obligation that is secured.'" *In re Schreier*, 111 B.R. at 27 (*citing Connecticut Nat'l Bank v. Esposito*, 210 Conn. 221 (1989)). Under Connecticut common law, at a minimum, the nature and the amount of the encumbrance must be disclosed. *Dart & Bogue Co.*, 202 Conn. at 579. The nature of a debt is determined by factors such as whether it is absolute or contingent, liquidated or unliquidated, or an existing liability rather than a future advance. *In re Schreier*, 111 B.R. at 27 (*citing Dart & Bogue Co.*, 202 Conn. at 579).

incumbrance.'" *Dart and Bogue Co., Inc. v. Slosberg*, 202 Conn. 566, 580 (1987) (*quoting First Nat'l Bank v. Nat'l Grain Corp.*, 103 Conn. 657, 663 (1925)).

The problem here – in addition to the missing note -- is "the agreement" Fiano had with Rocco Fiano constituted a completely different transaction than what was secured by the Manchester Mortgage. The Manchester Mortgage simply does not provide any reasonable notice to third parties of the debt owed to Rocco Fiano. Given the entirely different terms, the Court cannot conclude the Manchester Mortgage constituted an enforceable mortgage securing the debt owed to Rocco Fiano. Fiano failed to satisfy his burden of proof as to the validity and/or the amount owed on account of a lien to Rocco Fiano and the Court will exclude any amounts on account of such debt from the § 522(f) calculation.

*Interest on the Wolverton Lien*

Premier also contests the value of the Wolverton Lien. Fiano, in his pre-trial proposed findings of fact, asserted the Wolverton Lien totaled $46,740.90 with an original amount of $21,841.54 plus interest of $24,900.00 accruing at a rate of 6%. ECF No. 131. During the evidentiary hearing, Fiano testified he never made any payments and believed the sum owed on the Wolverton Lien, with interest, would be close to $40,000.00. *See*, ¶ 15. However, Fiano failed to present evidence supporting a 6% interest rate and failed to identify a specific statutory basis for any interest rate. The Wolverton Lien, on its face, does not identify a rate of interest. In Connecticut, a "money judgment may be enforced, by execution or by foreclosure of a real property lien, to the amount of the money judgment with (1) all statutory costs and fees as provided by the general statutes, (2) interest as provided by chapter 673 on the money judgment and on the costs incurred in obtaining the judgment, and (3) any attorney's fees allowed." Conn.Gen.Stat. § 52-350f.

17

Chapter 673 provides several options for post-judgment interest most relevant being §§ 37-1 and 37-3a.[21] Conn.Gen.Stat. § 37-1 applies to interest as compensation for a loan and sets a default rule that a loan of money is subject to interest at a rate of 8% in the absence of any agreement to the contrary. Conn.Gen.Stat. § 37-1(a). Pursuant to § 37-1(b), unless the parties agreed otherwise, post-maturity interest would have accrued at the default rate on the unpaid balance of the loan. "Furthermore, post[-]maturity interest under § 37-1(b) continues to accrue even after the entry of judgment and until the outstanding balance is paid in full." *Cadle Co. v. Ogalin*, 175 Conn. App. 1, 12 n.6 (2017)(*citing Sikorsky Financial Credit Union, Inc. v. Butts*, 315 Conn. 433, 441 (2015)). "Unlike § 37-1, § 37-3a applies to interest as damages and allows a trial court to award interest as compensation for the detention of money when the duty to pay arises from an obligation other than a loan of money." *Sikorsky Financial Credit Union, Inc.*, 315 Conn. at 442. Section 37-3a (a) provides, in relevant part, "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable." Conn.Gen.Stat. § 37-3a(a). "The Connecticut Supreme Court has explained 'the primary purpose of § 37-3a . . . is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money.'" *Lavy v. Lavy*, 190 Conn. App. 186, 207, n.15 (2019)(*citing Sosin v. Sosin,* 300 Conn. 205, 230 (2011).[22] Section 37-3a does not

---

[21] Conn.Gen.Stat. § 37-3b also provides post-judgment interest shall be recovered but is applicable only to negligence actions. Fiano has not provided any evidence that the Wolverton Lien arose from a negligence judgment, so the Court declines to assume this provision is applicable.

[22] "[A] detention of money without the legal right to do so, is established merely by a favorable judgment on the underlying legal claim, so that the court has discretion to award interest on that judgment, without any additional showing of wrongfulness, upon a finding that such an award is fair and equitable."

18

establish a presumptive statutory rate of interest, rather an award of interest under § 37-3a is discretionary and a trial court, in its discretion, can award a rate of interest up to 10% percent. *See, Riley v. Travelers Home & Marine Ins. Co.*, 173 Conn. App. 422, 461 (2017); *Ballou v. Law Offices Howard Lee Schiff, P.C.*, 304 Conn. 348, 365 (2012). Here, the Wolverton Lien is silent as to a rate of post-judgment interest. As Fiano failed to provide any other evidence establishing a specific interest rate, the Court will not infer a rate. Accordingly, only the face value of the Wolverton Lien of $21,841.54 will be used in the Court's § 522(f) calculation.

### *§ 522(f) Calculation*

With the contested encumbrances resolved, the next step is to calculate the degree to which Premier's Lien impairs Fiano's $ 2,500.00 exemption. From the fair market value of the property of $180,000.00, the Manchester water and sewer liens of $15,313.52 will be subtracted as they are against the Property as a whole.

| | |
|---|---|
| Fair Market Value of the Property: | $ 180,000.00 |
| Manchester Water & Sewer Liens: | - $ 15,313.52 |
| Subtotal of Fair Market Value after Water & Sewer Liens = | $ 164,686.48 |
| Fiano's Interest in the Property = | $ 82,343.24 |

Sum of all liens on Fiano's Interest together with Fiano's exemption:

| | |
|---|---|
| Wolverton Lien = | $ 21,841.54 |
| Premier Lien = | $ 247,282.91 |
| Exemption = | $    2,500.00 |
| Total = | $ 271,624.45 |

---

*Dilieto v. County Obstetrics & Gynecology Group, P.C.*, 316 Conn. 790, 796 (2015) (*citing Dilieto v. County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 52 (2013).

The sum of all liens on Fiano's Interest in the Property, together with his exemption ($271,624.45), exceeds the value of Fiano's Interest ($82,343.24).  Therefore, the Premier Lien will be avoided to the extent it impairs Fiano's exemption.

Sum of all liens together with Fiano's exemption less the value of Fiano's Interest:

$$\begin{array}{r} \$\ 271{,}624.45 \\ -\ \ \underline{\$\ 82{,}343.24} \\ \$\ 189{,}281.21 \end{array}$$

Of Premier's $247,282.91 Lien, $189,281.21 will be avoided, leaving Premier with a lien of $58,001.70 on Fiano's Interest in the Property.[23]

As the § 522(f) calculation regarding the Premier Lien results in a partial avoidance of its lien, all subsequent liens – the Sousa Lien and the Ford Lien – are avoided in full.[24]

### IV.    CONCLUSION

For the reasons set forth above, it is hereby

**ORDERED**: That, Premier's Lien is partially avoided and reduced to Fifty-Eight Thousand and One Dollars ($58,001.70) Seventy Cents against Fiano's Interest in 548-552 Middle Turnpike East, Manchester, Connecticut; and it is further

**ORDERED**: That, the Sousa Lien and the Ford Lien are avoided in their entirety.

Dated on September 25, 2019, at New Haven, Connecticut.



Ann M. Nevins
United States Bankruptcy Judge
District of Connecticut

---

[23]    The results are the same, even if calculated slightly differently.  Said differently, if from Fiano's Interest of $82,343.24, the Court subtracts the Wolverton Lien of $21,841.54 and Fiano's exemption of $2,500.00, there remains $58,001.70 of equity in Fiano's Interest in the Property for the Premier Lien to attach without impairing Fiano's exemption.

[24]    Fiano and Premier do not dispute that the Sousa and Ford Liens should be avoided in their entirety and the Court notes that neither of the Sousa or Ford lienholders filed an objection to the Motion to Avoid Liens.